Rule of prejudicial error, the effect of the rule of prejudicial error is to give over remedy despite the fact that there has been a clear mistake made in the proceeding. In Simmons and Sanders, two cases, this court recently addressed what it means in 7261B2, which requires the Veterans Court to take due account of the rule of prejudice. The court held that where the VA made a mistake, specifically in that case, a DCAA notice violation, that notice violation is presumed to be prejudicial. The burden was on the VA to rebut the presumption of prejudice. We request that the Federalist Circuit also adopt that construction of the rule of prejudicial error with respect to DCAA duty to assist violations. Sanders relied on the Supreme Court's Katiakis case, which held that the natural effect of error, before you read one, so what you're really asking us to do is extend Sanders and say the same sort of burden of proof allocation ought to extend in this case as well. Because you clearly argued that the burden of proof shouldn't have been on Mr. Clark to prove or disprove prejudicial error. The burden should have been on the government. And that's really what Sanders would have held too, except in a slightly different context, notice rather than duty to assist. But you're saying you think it ought to equally apply to duty to assist. Is that what I'm understanding? Yes, that's correct. And you think because the purpose of the two, notice and duty to assist, are the same, and therefore Sanders ought similarly to be extended to this context? Well, the purpose of the duty to assist is somewhat different than the notice. But Sanders, in this case rather, is perhaps even more compelling, at least as compelling, perhaps more than Sanders' notice issue because the DCAA was in response to the Veterans Court's decision in the Morton case. And Morton, of course, held that the VA had no duty to assist a veteran until a veteran had come forth with evidence showing that he had a plausible claim. This is precisely what Congress did in response to Morton by defining the specific kind of assistance which the VA, at the very minimum, must provide to a veteran. If I might just very quickly summarize what that is as it's relevant to Mr. Clark's case, I think it might somewhat help us understand why we think that he's entitled to that same accommodation as Sanders. And with regard to obtaining medical records, the VA has an obligation under the DCAA, it's very clear in the statute and in the regulation, that it must make reasonable efforts to obtain relevant medical records from private medical providers as well as from VA and other federal agencies. What constitutes a reasonable effort is slightly different depending on whether it's a private record or a VA record. In connection with private records, VA is deemed, if it makes one request and then a follow-up request, that's deemed to be reasonable under the regulations. With VA's own records or other federal agency records, the regulation is quite clear. The VA has to keep going at it until it has become convinced that those records don't exist or be further evidenced to find them would be futile. In both cases, whether it is a federal agency record, including VA, or whether it is a private record, if the VA is not able to obtain those records, it has to tell the veteran. That's new. It must tell the veteran who were not able to get them, explain why efforts were made to obtain them. That gives the veteran a plain opportunity to commence his own efforts to find those records or find something that would be a suitable substitute. What is a relevant record? I would note that the CAAC in this case assumed that there were VA medical records that had not been obtained and that it was an error for VA not to obtain them. I think that inherent in those findings are that those records would have been relevant because otherwise... Why is it inherent? When you say inherent, you say there is a presumption that records that they weren't able to find would have been relevant and could have changed the result, or do we go back as to how much effort was made to find the records? The standard, I believe, Judge Newman, is in the regulations of 3.159C. That regulation, with respect to agency records, not private records, but agency records, presumes, or deems rather, defines relevant records as including several categories. One is service medical records, another is VA medical records. So, VA, through its regulation, has deemed its own records to be relevant. Because the statute then commands that it shall obtain, or make efforts to obtain, all relevant records, they would have been relevant in that they would have supported the Veterans Claim or that they would have been relevant to the continuing medical analysis. The statute's not clear. I think that, in my view, it's relevant to the continuing medical analysis because we have no way of knowing what the content of that record is until the VA obtains it and adds it to the record. So, what Congress, in my view, was getting at was we need to have a complete record of, a complete claim filing record of the Veterans' treatment, and with respect to those records that are in the possession or in the custody of VA, VA has to get them. Now, the Veterans' responsibility, under the statute, there's not at all. Under the regulation, it makes clear that the Veterans' responsibility in this schematic is to cooperate with VA, and the regulation at 3.159C2 mentions such things as the Veteran providing sufficient information so that VA can locate the records. It also authorizes VA to inquire about what condition the Veteran was treated for. The court doesn't contend that its service records would indicate there's any medical record for his later developed diabetes. Not his service records, Your Honor. That's not, we've never complained during this litigation about it. The Veterans' Court took on the idea that since he fell outside the presumptive period for the development of diabetes by his service in Vietnam, that the medical records wouldn't be helpful. Well- That may be available beyond 1996, Your Honor. That's out of respect for diabetes, Your Honor. Right. The lung disability claim, of course, has nothing to do with the presumptive service record. Well, I was going to ask you about the diabetes claim. Yes, yes. The lung claim, there's some attribution in the medical records to his smoking habits. So I want to set that aside from the diabetes claim. Mm-hm. What is it that would be different, given that his service falls outside the presumptive period, that might be in a record that predates 1996 or something? We're referring now to the lung disability claim? No, no, just the diabetes claim. To the diabetes claim. Yeah. First, we need to clarify what we mean by the presumptive disability. Well, there's a documented disability by the Veterans Administration for persons that served during the presumptive time period in Vietnam, as I understand correctly. Well, there is a presumption of service- But he wasn't there in the presumptive time period. Correct, Your Honor. However, the other issue that we have raised in connection with the diabetes claim is that Section 3.309 of the regulation of the CFR is a list of diseases, which VA has determined to be so strongly statistically associated with Agent Orange and using Agent Orange broadly, herbicide exposure, that if the veteran- Let me try again. It's okay. I'm interested in the relevance of non-service medical records that might be helpful in establishing a claim for Mr. Clark, given the fact that he falls outside that presumptive exposure period. What is it that Mr. Clark contends? Because I think that's the obstacle the Veterans Court jumped over, because they couldn't find any relevance that would prejudice his claim, given the time date of the records he seeks. Well, the veteran- Which are in the 90s, when he first reported symptoms. Right. The veteran- First of all, there were high glucose level symptoms reported many, many years before that. The 90s were apparently when he was first diagnosed with diabetes. The veteran, even though he may not qualify for presumptive service connection, which is the whole ball of wax. If you've got the service in Vietnam during the appropriate time periods and you have one of the diseases that's on the list, which VA has statistically linked to exposure to herbicides, then, bingo, you have service connection. That's the presumption of service connection. He has never claimed entitlement to the presumption of service connection. What he has claimed entitlement to is that he can show direct service connection by showing actual exposure to herbicides, and he has indeed presented evidence, which has never been considered, so whether it's sufficient or not, I don't know. But he's presented evidence that he had actual exposure while he was on foot, on the ground, in Vietnam. But it's not in the- he was in the Navy. It's not in the nature of a medical record. Is that correct? It's in the nature of a service record, which was available. Nobody on the other side disputes his dates in Vietnam, that he had service, and that he is now claiming that through that service, which has been documented by veteran's records, that he was there. They're not claiming he was there, but what they've never taken a position on and never adjudicated was, did he have actual exposure to herbicides, because that's another basis upon which he can- if he had the actual exposure, he's been entitled to the benefit of the 3.309 list of diseases, which are entitled to service connection based on actual exposure. So he doesn't get the presumption of service connection because it's outside the time limit for presumed exposure. Is there any claim that there's any missing service record, not medical? No. No, there is not. And the service records are not going to be relevant anyway, in my view. Just to follow up, because he was in the Navy, and I didn't recall his saying that he was involved in ground activity or anything. You're asking us, since there's no evidence to presume, even though he's outside of the statutory period for presumption, to presume exposure because there's nothing in the medical records. But I'm trying to understand the relief that you're asking for. You're asking to go back and go back for one purpose. Well, there's an administrative decision, and it's in the appendix, dated in 1998, in which VA found that he had service in Vietnam. And that, in turn, was based on evidence which he submitted, including statements from his committee. But he has a statutory presumption, which he doesn't get under because of the time of the suit. Correct. He does not get the statutory presumption of exposure. He additionally, though, submitted evidence that showed that the herbicides, defoliants, were being used in Vietnam at the time he was there. They were not apparently used in some way that Congress attached that time period to the presumption of exposure. Okay. So, counsel, let me think. I think I understand your argument here. And let me say it so you can tell me if I've got it right. You're saying that the board below, he had presented evidence of potential actual exposure, and the board below didn't address that because they basically said 3309 doesn't apply to you because you weren't there during the time period. You, in turn, say, no, wait a minute. You're absolutely right that we don't get the exposure presumption that 3307 affords. However, we ought to get the service-connected presumption. That's your argument, right? We ought to get the presumption that if you have this disease, we shouldn't have to show medical nexus or, you know, a medical nexus between diabetes and exposure to Agent Orange because that presumption we get from 3309. And remind me, did you cite to us, and I'm not sure if you did or if I have a brilliant law clerk who found these things. So you tell me, a federal register where the Veterans Affairs has already said that this is exactly the case, and if you can prove actual exposure, you do get the service-connected presumption from disease. I don't know if you presented that. It's dated May 2001. Yes, Your Honor. First of all, you precisely explained what our position is, and I wish I had done so well. Number two, what you're referring to is cited in the Secretary's brief on a page which was inadvertently left out of the brief, and I did not get until after I filed my reply, but essentially agrees with our position on that. That's the way I read that page. So everyone here, as far as you believe, and I'm sure they'll tell us the contrary, has agreed that the veterans folks have already interpreted this regulation and that this regulation does provide a service connection if actual exposure can be established. Precisely. Okay. Approaching a committee of assignments, please conclude. Thank you. You're welcome, Your Honor. Can we start with that issue? Is that okay? Absolutely. Okay. That's page 24, the missing page of the brief. I locked up this morning, Your Honor, and I've got to give it to you now. We did. We did. May it please the Court, we did cite that. Mr. Humphrey. Good morning, Your Honor. May it please the Court, naturally we have a different view of that. I think the plain language of the regulation. And, in fact, the citation is to a preamble to the implemented regulation which reacted to the diabetes addition to the list of diseases. Our position on the diabetes claim is the Veterans Court was correct in denying the claim because Mr. Clark did not fit within either of those. Statutory or regulatory definition of service in Vietnam for purposes of herbicide exposure. Did he assert actual exposure? He asserted a claim that he had been exposed in 1960, in October 1960, when he was on a state visit aboard a boat. The response to that is in the Federal Benefit Act of 1996 when Congress adjusted the terms of service for purposes of herbicide exposure, Congress specifically limited the time period from January 1962 through May of 1975, which was different from the general definition of Vietnam era, which extends from February 1961 through May of 1975. And the reason Congress did that was it was recognizing, and the legislative history specifically points this out, it was recognizing that, well legislative history I'll just say for the record is Senate Report 104-371, page 21, 1996. I say it because it's not in there. Specifically recognized that the purpose was that the studies in the Vietnam era determined that January 1962 was the first time herbicides were used in Vietnam. In contrast to Mr. Clark's observation about what he considered to be the... No, no. What I'm suggesting, Your Honor, is by law Congress has gone into the area and defined the time period upon which the presumption of exposure exists within Vietnam. But wait, what about all the... I mean you all seem to have interpreted this already. Not at all, Your Honor. I'm looking at 66F Federal Register 23-166, which is comments on a proposed rule. You go down one commentator urged the VA amended the proposed regulation to include veterans who did not serve in the Republic of Vietnam, but were exposed to herbicides during their military service. And the response is, however, if a veteran who did not serve in the Republic of Vietnam, but was exposed to an herbicide agent, defined in 3307-86, during active military service, if he has a disease on the list of diseases subject to the presumptive service connection, VA will presume the disease is due to exposure. And the key language... Not in Vietnam. Exactly. Because what was happening is Congress has gone in numerous studies, including the document that's contained in the appendix, which the agents wanted to study, that Mr. Clark submitted below. I mean clearly the evidence has always suggested that in 1960 Vietnam approached the United States government and asked whether they would be able to use herbicides. And the United States government did not authorize the use of herbicides by the Republic of Vietnam until November 1961. And studies that have all been done and supported legislation for the presumption indicated that the actual herbicides weren't in fact used until 1962. Hence, the Vietnam-era definition for purposes of herbicide exposure begins in January 1962. Just following up on Judge Moore's question, Mr. Clark's service record indicates he was in Vietnam in 1960. Correct. And I understand what the congressional investigations have found and concluded as an exposure period. But what I think I understand what Mr. Clark is saying is I was exposed, however, to the herbicide in 1960. Your position is they weren't using the herbicide in 1960. But I think the question is, and this follows up on Judge Newman's question and Judge Moore's, if there isn't a finding that from the service record or VA other records, how do we know whether what Mr. Clark is saying is correct or incorrect? For instance, he says I was on a ship and I got off it and they were spraying stuff around and it turns out it was an herbicide that has the same chemical composition as Agent Orange. I don't know what he would allege, but I think the point is there's no finding or is there? Mr. Clark is asking for the benefit of a presumption that has been established by Congress and implemented through regulation. Well, he's asking for the presumption of illness if he has exposure. He's asking – I want to get to the threshold factual question of exposure. And I think what he's saying is I'm there in 1960. I was exposed. What we're saying is Congress has spoken on this issue. As a matter of law, in order to get the presumption that relates to the connection of his present-day diabetes to his Vietnam service, he has to have served within the time period that Congress has defined. So he's out of luck with respect to 38 U.S.C. 1160. Nobody is serving Vietnam in 1960 even if they were rained on with Agent Orange and have a photograph. Is your position to the government – As a matter of law, they cannot recover. As a matter of law, Congress has ruled that the effective period is January 1962 for service in Vietnam. And nothing in the regulation that implements that changes that. What Mr. Clark is hanging his case on is this language in the implementing – Federal Register citation implementing the regulation, which says, oh, and by the way, during the notice and comment period, we received comments from folks who did not serve in Vietnam but think that they were exposed to herbicides. Would they, should they be able to establish exposure, be able to benefit from the connection between herbicide exposure and diabetes? And what the Veterans Department said in implementing the regulation is that we are not going to change the language or regulation that deals with Vietnam service. No, that's not – wait, wait. Where does it say that part? What you just said. Well, the first sentence says section 116 establishes the presumption of exposure to certain herbicides for any veteran who served in the Republic of Vietnam during that time. And that's one of the diseases on the list. However, if a veteran who did not – That's an exposure presumption. That doesn't say what you just said a minute ago, which was a minute ago you said – and the regulations clearly say if you served in Vietnam outside of this time period, it doesn't apply to you. I would point you to the regulations. The regulations themselves, 3.307 and 3.309, implement the statute and say service in that time period is required. Yeah, but, you know, they also say service in Vietnam is required, and you're telling me that your interpretation from the government of that regulation is service in Vietnam is not required. If you can prove actual exposure, you get the presumption, even if it's not in Vietnam. So the reg says service in Vietnam during these years, and you've told me the government's interpretation of that reg is it doesn't have to be in Vietnam. You can still get the disease presumption, even if it's somewhere else. What? The government's interpretation is not really of the regulation. That's what I'm trying to explain here. The regulation is implementing the statute, which relates to Vietnam service. You said 3.309E in the answer. No, 3.309 relates to service in Vietnam. This is what I'm trying – the distinction is that whether or not you're exposed – the determination as to whether or not you're entitled to any of the presumptions, based upon – and this is the important part – based upon your Vietnam service, if your claim, like Mr. Clark's, is based upon his Vietnam service, he has to have had that service within the time period established by the statute and the regulation. All this statement says is that we will treat those folks whose service is based outside of Vietnam, but who can establish exposure the same way that it would if you could establish a right to the presumption pursuant to the statute and regulation. What we are suggesting is that in analyzing – and as the Court may well know, and can certainly take judicial notice – the history of the Agent Orange statute and regulations is long. Numerous studies were conducted by, on behalf of, Congress in order to identify when these things were used. So when Congress rules at the end of the day that, for purposes of Agent Orange exposure, herbicide exposure, we're going to actually shrink the definition of Vietnam-era service from 1961 to 1962, Congress has concluded that, if we're going to get this presumption out there, that you have to meet that. They shrunk it for the exposure presumption. For the exposure presumption. They shrunk it for the disease presumption. Let me ask you one more question, because I feel like I'm losing up all your time on this. Yeah, but I would just finish by saying that the whole purpose of shrinking it for the exposure presumption is to show that there wasn't potential exposure outside that period. Otherwise, they would have no reason to shrink it. Of course they would, because it could be used quite extensively during that time period, such that we would want to say everyone who's there in that time period is presumably exposed. Maybe it was only used sporadically outside of that time period, so we don't want to give everyone exposure presumptions. But let's not continue to argue about this. One other thing. The VA Guide on Agent Orange Claims is the other reference that I've been looking at with regard to interpretation, and I don't know if this was cited by them or my law firm had it. Unfortunately, I've lost track now. So the VA has a guide on Agent Orange Claims on your website, and I pulled it up, and it talks all about year 3307 and 3309. And let me read you this, because you may say it's the same as the way to interpret the comments in the register. It's herbicides were used by the U.S. military to defoliate military facilities in the U.S. and in other countries as far back as the 1950s. Even if you did not serve in Vietnam, you can still apply for service-connected benefits if you were exposed to an herbicide while in the military. And then it goes on to say you get the disease presumption. This, again, is consistent. The point of the statement in the preamble to the Federal Register site is to address those folks who were at Fort Detrick, for example, in the 1950s, who may have been exposed to Agent Orange when it was being tested, or in Thailand, as the document indicates, where it was tested in the late 1950s, but not in Vietnam. Vietnam was an area, service in Vietnam was an area thoroughly exhausted by Congress when issuing 38 U.S.C. 1116 and by the VA in implementing regulations. So if you notice, it's consistent throughout that the key factor is service outside Vietnam. If we're talking about Vietnam, if you're going to try to base a claim upon a Vietnam service, you've got to meet the date restrictions. Otherwise, we recognize we did use it in other places around the world, and so if you can establish that you were exposed at one of those other places, we'll give you the benefit of the presumption of the connection. Do you want to say anything about standards? Well, yes. I mean, four points, I think, are relevant to the standards. First of all, standards obviously does not control this case because standards on space and facts is limited to the notice provisions within the Veterans Claims Assistance Act. Secondly, we think that although the Court is well aware we're not satisfied with the rationale of standards, we think it's clearly distinguishable in this case. The Sanders Court was concerned with how is the veteran ever supposed to know, you know, if he doesn't get the right notice, what to do in response to his claim. In contrast, in this situation, the veteran has an idea exactly of what he thinks is missing from the record, and he identified it. One thing we would consider is that in Sanders, the Sanders Court did not, and specifically did not, say that the veteran was relieved of his burden to identify error. He had to identify the notice of error. So even if you were to apply Sanders in this case, you would continue to apply the fact that in this case, the veteran would have had to identify the error, which he did in this case. He said, I didn't have his 1994 document, his 1996 document, and I'm not happy that the x-ray reports that were reviewed by the medical doctors in 2002 weren't attached when the medical reports were provided to the Board. So he's completely, he's definitely identified his three bases for failure to assist. What's different about that than a Sanders notice question is, essentially, or effectively, by identifying the notice of error, as he has in this case, he's pretty much identified the prejudice. It's pretty much logical on the face of the documents, as the Veterans Court did. It provides the Veterans Court with a very easy record to review and say, in this case, there's the 94 document, the 96 document, the x-ray report contention. We can look and determine whether or not there was prejudice as a result. So in some sense, the assignment of the burden is really irrelevant. In fact, even though the Veterans Court says in this case, well, he didn't plead prejudice, the Veterans Court goes on, as it can and did in this case, and examines the record as a whole, and concludes, and I think correctly, that there could be no prejudice in this case because the issue that all of those records go to was the issue of present disability. Let me ask you a question about the record. I'm also going to ask Ms. Booth. But this Veteran worked his way through the Regional Office and the Board and the Court and so on. As far as you observed in your preparation, was there any hard evidence of exposure? Or was it just saying, I was there and all these terrible things were being done at the time? What I did review the entire record prior to the argument, and I found there was essentially, well, initially the issue wasn't so much exposure. He had made a statement of a claim. He submitted a statement in support of this case at one time, indicating that he had done a boat in May of 1961 that went up the Saigon River, and when he was there, he looked at the shore and it looked to be cut back. He presumed it was because of herbicide exposure, and moreover, he had four days of shore leave, and so he thought that he could have been exposed at some point. That was initially what happened. Actually, that was the evidence before the Regional Office. The Regional Office determined, based upon obtaining records from the military, that the boat was nowhere near Vietnam in May of 1961, rather the boat was docked in Japan. Before the Board, the veteran responded to this by providing supplemental evidence in the form of a couple of letters from co-people on the boat, which indicated in a newspaper article showing a picture of the boat in Saigon Harbor.  He actually was wrong with his statements with respect to service in May of 1961. The boat went up the Saigon River in October of 1960. So the VA went out and got those records from the Navy, and yes, sure enough, there they are, the ship logs confirm everything, and so as far as the finding of fact goes, everyone now agrees that the boat went up the Saigon River in 1960. The evidence of exposure is limited to, A, it begins and ends with his statements that based upon his observation of the shoreline, it was cut back. I will add that the newspaper picture he included shows a picture of the boat docked at the harbor with soldiers in front of it with trees on either side. I leave that for whatever, it's not for us to talk about. But that was the evidence of exposure, simply his characterization of what he thought may have caused some of this defoliage, what he called defoliage. In contrast, of course, we have oodles and oodles of documents before Congress which determined that it wasn't until November 1961 that the United States even authorized the use of herbicides, and it wasn't until 1962 that they were actually used. Yeah, I just wanted to finish off with four points about, if I can, I'm sorry, but I did want to finish my four points in response to Judge Moore's initial question about standards. Right, so I'm going to talk really, I'm doing that already. But we would say, again, we think that it's distinguishable. We think that in this case, clearly the record allowed the Veterans Court to determine that the three items of evidence applied to the present-day disability prong of the three prongs, meaning in-service incident, present-day disability, and nexus. The present-day disability prong, as the Court noted, was not an issue. The government agreed he suffered, he had a present disability of diabetes, as well as the lung condition, COPD. So these documents were not material, therefore were not relevant. There is an argument that perhaps they're not even, because they're not relevant to the thing, there was no breach of the duty. But what we would say is, in conclusion, because the records at issue in this case really aren't relevant to any of the issues that are outstanding, a remand by this Court to determine whether standard is appropriate would seem to be not necessary, given that there's only one conclusion that could come from it, and that that would be... I understand that you don't want a remand. Thank you, Mr. Latham. What I want to do is take another look at the relief that you are requesting. Could you ask that it go back? Yes. And that's why I was just asking myself, what would be different if it went back? The difference would be that the VA would have to come forward and meet the burden of rebuttal to show that there's an absence of prejudice in the VA's failure to obtain the records that Mr. Clark identified. And, you know, I think it's important to point out, the VA has already permanently told him, we've got to get the VA treatment records. The VA just has not complied at all with the BCAA duty to assist provisions. It not only didn't get the records, it misstated whether it had or not, and it has never complained that it didn't have enough information, never asked him to supplement his information in order to identify those records. Secondly... But if this goes back, isn't the Court... Okay, so we say the government now has the burden, not Mr. Clark. Well, they're just going to say, well, those documents were irrelevant, and the Board's going to say you're right. Well... So what is the point? Because I think the Court would be restrained from saying the documents are irrelevant in view of a 3.156c that says they are relevant. VA medical records are relevant. I would also, and I would cite this as additional authority, not because it's binding on Your Honors, but because it is very instructive. There was a decision from the CABC yesterday in a case called Hyatt v. Nicholson in which the CABC, without addressing the role of prejudicial error, nevertheless recognized the difficulty in determining if documents are relevant when they don't have the evidence before them. They sent that case back looking to the pre-BCAA standard. The Court said the issue is, are the documents potentially relevant? In that case, VA has to get them, and it's breached its duty to assist by failing to do so, and sent the case back. I think it's the very same situation here. We're still talking about medical records that we don't have any clue what they say. They're VA medical records. They're within VA's possession. And VA, in fact, told the veteran that it had gotten all of his VA medical records. It's just very, very difficult for me to understand how the Veterans Court, if it applies 3.156C and looks at the mandate from Congress that VA shall get relevant records, how it could find that the VA did meet its burden of going forward to rebut the presumption of prejudice. What the CIDC has done in this case, in my view, Your Honor, is essentially put Morton back on the table. Congress made it very clear that it did not condition the VA's duty to assist the veteran on whether the veteran had met a certain level or a certain standard of plausibility regarding his claim. Congress wants VA to do particular things, and they're defined very plainly in the statute as well as implementing regulation. They're not confusing. They're not unclear. VA just dropped the ball, didn't do the job and insult injury by telling the veteran affirmatively, we have done that job. We find out for the first time before the court that it did not do that job, and now the veteran's hands are essentially tied because he doesn't have the records. He can't prove how he was prejudiced. That's why this case ought to be governed by Sanders. VA should have the burden of showing that there was an absence of harmless error. There's no question it was error. The question is who has to show who has the burden. Okay. I think we have the issues. Thank you very much, Your Honor. Thank you, Ms. Booth, Mr. Hawley. The case is taken into submission.